Good morning. May it please the Court, I'm Lori Eiseley and I represent the class of farm workers. With me today is Joe Morrison at Council Table. The central issue on appeal in this case is the interpretation of the Washington Farm Labor Contractor Act. The workers seek mandatory statutory damages of $500, and as prevailing parties, the workers seek their reasonable attorney's fees. On their discrimination claim, the workers also seek a remand to the district court with instructions to apply the appropriate analysis. The first issue I'd like to address this morning are the statutory damages under the Washington Act. For the Court's convenience... Is the use of Washington law for this question waived by the workers? With respect to the statutory damages... Interpretation, yeah. No, Your Honor. You didn't cite it to the district court. You relied on federal law. Your Honor, with respect to the legislative history, which we rely on for our statutory interpretation argument, the argument was preserved that at the trial court level that we sought $500 in mandatory statutory damages. Well, I guess my worry is that if I use Washington law in order to interpret this act, I'm trying to figure out where I go in your brief to the district court to find that I should use Washington law for this interpretation. Yes, Your Honor. It seemed to me that you were saying I should use federal law, which doesn't give you a lot of help. Your Honor, at summary judgment, the workers argued that they were entitled to $500 mandatory statutory damages under the plain meaning of the state act. We argued Washington law clearly provided the workers were entitled to those damages, just looking at the plain meaning of the statute. On appeal, we have provided this court with the legislative history, which demonstrates that that was, in fact, what the legislature intended. Well, you're jumping at the legislative history twice now. I've got to say I found it nearly incomprehensible. What in there suggests that members of the legislature actually understood what was being discussed between what appears to be a committee staff member and somebody outside? I think there are two critical points, Your Honor, and the first is sequential drafting. When the first discussion draft of the amended state act came out, the words up to- No, no, no, no. You're missing my question. Why should we look to that as an authoritative statement of what the members of the legislature intended? Nothing in there looks to me like the kind of thing that legislators ever saw. Because the Washington Supreme Court has held sequential drafts are instructive in determining legislative intent, particularly- And they don't care whether the legislature saw it? Particularly as here it's important, Your Honor. You're answering no, they don't care whether the legislature saw it? Is there anything here a legislator is likely to have looked at? I mean, the legislative history is meant to reflect the intent of the legislature, not some staff member talking to somebody outside. And as I go through here, to the extent that I can derive anything from it, but I don't derive anything that says, you know, the legislators themselves were really thinking about that. Two points, Your Honor. Back to the first point you asked me, whether it's yes or no, you don't regard it at all. What the sequential drafting argument does is it assumes the legislature was aware when something was changed. Well, I can assume lots of things. I can assume the Cubs are going to win the World Series this year. But I don't think it's going to happen. And I don't think most legislators are dwelling on what's going back and forth within committee staff. Two other points, Your Honor. Here, both the written testimony and the comments at public hearing urged the legislature to remove the second up to, which modified statutory damages. And that, in fact, took place. And both the comments and the committee summary, the summary of the Senate report, states and refers to statutory damages as liquidated damages. Your Honor, that demonstrates the legislature intended statutory damages to operate as liquidated damages in the amount of $500. Liquidated damages can't be detached from realistic assessment of actual damages. I mean, you can't just put down any number you want for liquidated damages in a contract and expect it to apply. Here, the legislature set what the damages should be, actual damages or statutory damages, and used the key language after that, whichever is greater. And this is the second point I wanted to make, Your Honor, with respect to the legislative history. The Washington Act was modeled after the Oregon Act. There was extensive questioning by the legislature regarding the provisions of the Oregon law. The very day after that hearing, they were provided with the Oregon law and a summary of Oregon's provisions. And what Oregon does is provide for mandatory statutory damages, just like the Washington Act does. And they took that specific language, whichever is greater, which modifies both statutory and actual damages, and the legislature incorporated those words from Oregon. They are nowhere in either of the federal statutes. Just another problem with the premise that this is a mandatory damages statute, because the verb here is may. The court may award damages. What's mandatory about the word may? You're trying to change it to shall, it sounds like, but it doesn't say shall. But what the court needs to do when interpreting legislative intent is to interpret it within the purpose of the statute. You don't know the difference between may and shall? I mean, when the thing starts with may, the notion that you can extract from that a mandatory provision seems to me a hard sell. I think what the court is required to do is read all the language of the statute. I've got it in front of me. While the statute starts with may, Your Honor, it continues on. And it says the court may award actual damages up to the full amount of actual damages, comma, or statutory damages of $500, another comma, whichever is greater. And what we ask this court to do is read all the language of the statute, which indicates the court has discretion. Once a violation is found, and there is no doubt there were violations in this case, once that violation has been established, the court does have discretion, and that discretion is limited to awarding actual damages or statutory damages of $500 for each violation. So why couldn't the court in this case say, I'm going to exercise my discretion and not award $500 as a statutory damage figure? Because the statute does not allow the court that discretion. The court's discretion with respect to damages is to choose actual damages or $500 per violation, whichever is greater. That is the limit of the court's discretion here. So it's all or nothing. So you're inviting the district court to award nothing. If there is a violation, Your Honor, the court must award damages. Why? It says may. It says may, but, again, that's followed by the additional language, which tells the court they're required to choose the actual damages or $500 in statutory damages, whichever is greater. So you're suggesting, then, that the court is limited if by the party as to the damages it can award? The court has discretion to do two things, Your Honor. Well, but if the party doesn't plead actual damages, what you're really saying is that the party then limits the court as to the damage that can be awarded at all. And you're doing that with a may. In this case, Your Honor, the workers sought actual and statutory damages. Well, in the end they didn't seek actual damages. They dropped that. They dropped that. They dropped the actual damages. They didn't seek the actual damages. The original complaint, Your Honor, which you were referring to in your hypothetical. I appreciate what the original complaint suggests, but in the end when it went to the court to make the decision, it said, we're not going for actual damages. So then you're suggesting that the party may, if I adopt your idea, the party may then, not the court, but the party can change the damage the court must award even though there's a may squarely in that phrase. Yes, because there is additional language present which limits the court's discretion and is consistent with the legislative history which shows Washington, like Oregon, chose to provide fixed statutory damages to protect exploited farm workers. So if we change the word may to shall, you read the statute exactly the same way. Actually, Your Honor, it's a very interesting question. Obviously it's not the question we have before us today, but we did consider that in looking at the statutory language, and actually using shall presents additional possible problems because there are three disjunctive phrases or two, one grouped together, the damages, and then other equitable relief. So even had the legislature used shall here, there may have been problems with the statutory construction, which is why it is so important for this court to also consider the legislative intent and the purpose of the statute. If I can't determine what the legislative intent is from what I've read, and I've read through it, and it's very difficult, should I certify this question to the Washington Supreme Court? No, Your Honor. This court has jurisdiction over the issue. We do have jurisdiction, but this is certainly Washington law, and it certainly could be argued that it isn't very clear from any legislative history what the legislature intended to do. So why shouldn't the Washington Supreme Court decide this rather than me? This court has jurisdiction. This court routinely decides questions of state law. We are before you today asking you to do that. The only Washington case that has interpreted the purpose of the Contractor Act has found the purpose of the act is to protect exploited farm workers, and we ask this court to determine the meaning of the statute consistent with that purpose. I'd like to reserve my remaining time for rebuttal. Thank you. Okay. Good morning. May it please the Court. Brendan Monaghan for Valley Fruit Orchards and Green Acre Farms. The only specific issue I would take with the opening presentation by Appellant's Counsel was a reference to the summary report. The appellants contend that there is a report submitted with their legislative materials. It's at pages 104 and 105 in the addendum to their opening brief, and they suggest that that stands for some type of statement of legislative intent. I've looked at the document. It's not actually addressed to anybody. It's not signed by anybody. It doesn't have a date. We don't know who prepared it or to whom or for whom it was intended, and I think that underscores Your Honor's concern. There is some legislative history here that's been submitted, but it's very difficult for us to tell who saw it and what they may have made of it. With the Court's permission, I would like to start by talking about attorney's fees. How is it the plaintiff didn't win? I beg your pardon? How is it the plaintiff didn't win? This is the prevailing party. The plaintiffs insist they were the prevailing party. I don't think the trial judge disagrees with them. I went back and looked at the trial judge's order on this, and he says they did prevail. They prevailed on a number of important respects. They won at summary judgment, which resulted in hundreds of thousands of dollars in damages for a large group of plaintiffs. I think they did prevail. I think the Court recognized that the Court could have awarded attorney's fees to them. The Court exercised his discretion not to for a number of reasons, one of which was the plaintiffs sued Jim Morford, one of the owners of Greenacre Farms, in his individual capacity. They lost that case. They sued John Verbrugge, one of the owners of Valley Fruit, in his individual capacity. They lost that case. They did bring a claim for actual damages, pursued it through discovery, pursued it all the way through the jury trial. It was only at the conclusion of the jury trial, when they actually had to come up with evidence at the bench trial phase, that they withdrew that claim. And I think what the Court recognized, today they try to spin it as a strategic move. What the trial court recognized is that that abandonment should be properly construed as a loss. It wasn't really very well explained if that's really where he was going. I mean, he's talking about, well, they lost on actual damages. Well, I mean, if we think, if we just look at the progression of the case, those are on the table until it came time for the bench trial. And then suddenly when the plaintiffs had the burden to produce evidence of damages, it went away and they stuck with this argument that, well, we'll just take our $500 automatic penalty. Isn't the attorney's fee case really a case that really is irrelevant if we're talking about what should we do with the statutory damages? I mean, if, in fact, we held against you on statutory damages, we said the court had no discretion to reduce the statutory damages from $500 per violation. Isn't the attorney fee issue then gone? I don't think so, Your Honor, because the trial court still maintains the discretion to award attorney's fees regardless of what the court has done. Well, I understand that if the trial court made a bad decision in how it awarded the statutory damage case, and at that point we reverse, it seems to me then the court ought to think again about attorney's fees, because if I were to suggest $500 per violation is what you should have been assessed, that might be a totally different view on the part of the court as to who wins and who doesn't. Well, I conceded to the court that if the damage, if this court were to determine that instead of $227,000 but the plaintiffs were entitled to $2 million, perhaps the trial court may want to revisit that issue. Well, then, I guess I would then move you back to the statute itself. Okay. What about the plain language of the statute? Why is not your idea and the trial court's idea of what happened in this case make the language, whichever is greater, meaningless by what you have suggested and what the trial court did? I think it's obviously not a model of clarity, the way that this statute is. Well, whichever is greater was certainly intended to be something by the legislature. It may have been, but it's immediately followed by or other equitable relief. Well, and they could have given other equitable relief, but in this particular case equitable relief really wasn't an option because of the timing of the verdict. I'm not sure it wasn't, Your Honor. I think that the trial judge in this case reconciled the language like this. He said, in a case when we're dealing with unclear statutory language, I may determine what an actual damage is and I have the discretion to award up to that amount or less than that amount. I have the option of awarding statutory damages, and I should be able to address those the same way that those statutory damages were assessed in the six Mexican workers case. I appreciate the six Mexican workers is a case, but that is a different case. That has federal law involved, and if we have federal statute, Washington law says per plaintiff, per violation. Washington law says whichever is greater. Neither of those clauses are in the federal statute. That's true, Your Honor, but the state statute preserved the word may, and it used the word may in the same statutory provision where it used shall. There's very clear rule on that, and that means that the legislature intended to vest the trial court with broad discretion. I think when we look at the Alvarez v. Longboy case, that gives us a framework. What the Alvarez v. Longboy case stands for is that decisions of this magnitude shouldn't be determined by the placement of a single comma. Well, doesn't it look very good when the AWPA says up to $500 per violation, and this statute doesn't say anything about up to, that a court ought to say, well, in this particular situation, there is no up to, and so, therefore, I got no discretion. It's $500 or it isn't. If I could draft the statute again, I'd like it to mirror AWPA, but it doesn't. What it did was mirror at the time the Federal Labor Contractor Registration Act, which is exactly what the plaintiffs argued in the summary judgment materials. When the plaintiffs cited to a Wisconsin case, suggesting to the trial court that the trial court should follow the Farm Labor Contractor Registration Act as guidance, as a federal counterpart, and that is exactly the statute that the Alvarez v. Longboy case addressed. Same commas, same modifiers. And here's, I think, what's important about the Ninth Circuit's decision in Alvarez v. Longboy, and that is it said it would be incongruous. It would be anomalous. Anomalous was their word. Anomalous, excuse me. Anomalous is the word, not incongruous. Anomalous, and to actually vest the trial court with the discretion to award less than actual damages when there were actual damages, but then to divest the trial court of any discretion when there are no actual damages. And I think that the language they used is important. They said it would be inappropriate to impose a penalty disproportionate to the offense. They looked at the scheme of the entire statute, which just like the Washington statute is intended to assist oppressed farm workers. They were worried about a rigidity of enforcement that might actually frustrate the remedial intent. If you have a question, I'll answer it. Otherwise, I'll turn to the Oregon law. I don't know whether the Oregon law is going to be much helpful to me because I'm looking at the words of the statute, but if that's where you want to go, go for it. Well, the plaintiffs talk about Oregon law. They insist that the Washington statute was modeled on the Oregon law. And I've listened to the tapes, and I've read through all the documents. I haven't seen anything that said it was modeled on Oregon law. In the 47-minute taped congressional hearing, which I submit is the only evidence we have of what the lawmakers were actually thinking, the proponents were asked about Oregon law, not as a model, but out of a concern about what impact the Oregon law had had on farmers and farm labor contractors. Very important. Is the Oregon law identically worded to the Washington law? They're not even close when it comes to statutory damages, Your Honor. They're not close. None of the same commas. You have $1,000. I wish I had it in front of me. I'd read it to you. They're not close. But here's what happens is there's a spirited discussion in that hearing about Section 14 of the bill that is before the House. Section 14 would have made farmers jointly and severally liable with farm labor contractors for the wages that farm labor contractors failed to pay their employees. Very interesting discussion. I don't know if Your Honors have had the opportunity to hear it. They talk about respondeat superior. They talk about independent contractor status. The worry from the legislators is that the farmers are going to be unfairly penalized for the misdeeds of the farm labor contractor. What happens as a result? Section 14, it's at page 71, by the way, of the addendum that the plaintiffs provide in their opening brief, doesn't make it into the final bill. So the one point where the legislators are on record as expressing any type of concern or intent has to do with protecting farmers from the misdeeds of farm labor contractors. And I think that with that backdrop and, again, with the premise we have in and Alvarez v. Longboy, this court can comfortably conclude that the trial court had the discretion to award less than $500 per violation. I would like to take up another issue, if I might, and that has to do with the workers' Seventh Amendment right to jury trial. Sure. As I understand it, the district court held on summary judgment that Global was the agent of the growers. I think that that may have been true under the Agriculture Worker Protection Act. Well, but in any event, Global was the agent of the growers, as I understood it, under the Act or whatever. You're suggesting then as to this particular situation, they weren't the agent? Well, under the Discrimination Act? The answer is absolutely. That's what we're contending. Well, I guess I'm having trouble because even in that particular instance, there were some issues to be tried to the jury and some issues to be tried to the court. The jury found liability and agency in my book. Your Honor, I'm not sure that agency was ever found by the jury. Okay. So the jury found only liability. Right. On behalf of Global, right. The sole issue then to be tried was the vicarious liability, correct? Not at all true, Your Honor. To the judge? Not at all true. What was to be tried to the judge besides vicarious liability? All claims for all liability. That is exactly what was said on the first day of trial. Let's remember this. That is, we went into trial. How come you have all claims? Are you talking all other claims? No, I'm talking all claims. Any claim that can be used to reach liability against these farmers was reserved to this judge. That's why the farmers didn't pick a jury. That's why the farmers didn't open to the jury. That's why the farmers weren't allowed to close to the jury. They had nothing to do with the underlying discrimination claim against Global that was tried to the jury because, as the judge said, all claims for all liability with respect to the growers are tried to me. There was no nuance there. Can I ask you a couple of quick questions? Absolutely. I'm not clear. I think you say in your brief that the issue that the jury tried was whether Global discriminated against its own employees. Correct. And did the judge's decision contrary in relieving growers of liability, did that affect the jury verdict in favor of Global? Not at all. In other words, the jury verdict stood. Yes. And what the judge was saying was, I'm not going to enter a judgment against the growers because I disagree with that jury verdict. But he didn't, as I just want to be sure, he didn't do anything to undermine the jury verdict. You're exactly right. The plaintiffs, as they sit here today, have millions of dollars of judgments against Global Horizons. The judge did not affect that verdict at all. What the judge said was that the deal here, again, just for context, several days before the trial actually started, there were dispositive sanctions against Global Horizons. The parties didn't even think it was going to participate. But if you look at the pretrial order submitted by the parties, the plaintiffs knew they still had to meet all of their elements. They still had to prove to the judge that Global had committed discrimination, even though they had what amounted to a default judgment against Global. Let me ask you a couple of questions. Where do I find in the judge's analysis the elements of vicarious liability? The judge addresses them in all candor, Your Honor, in a footnote. Yeah. The judge concludes that he does not need to reach those issues. And I submit to this Court that this Court doesn't need to reach agency either. Well, just a minute. So you're suggesting that the judge, contrary to his summary judgment decision as to one act, as to agency, was hearing the agency argument for the first time as to the additional issue and determined they were not agents on that particular issue? I think that they are completely different issues, Your Honor. It was a different judge at summary judgment. And the summary judgment, as I think you know, was not even contested. It's an interlocutory order. When we get to the trial, the judge sat there in his robes and considered the entire case against the growers was their discrimination. And what the judge said was, sure, Global discriminated indiscriminately against these local workers, but not because of race, not because of national origin, solely because of financial incentive and because of immigration status. Immigration status, not a protected right. If Global's, if you're right in that the charge was that Global discriminated against its own employees, would growers be responsible for that even if there was an agency relationship? The answer is I don't believe so. If we do reach the agency issue, Your Honor, I would ask this Court to take a look at its ER-275. It's the actual contract between the growers and Global Horizons. It's uncontested in this case that even while Global Horizons had its own employees in the fields performing these seasonal activities, the growers had their own crews. They were hiring Hispanic local workers on their own to augment what Global Horizons was doing. The contract between the parties, Global Horizons had a contractual duty to provide safe and efficient services in the orchard. They had a contractual duty to provide qualified and competent workers. And there's actually a specific provision that allows the growers oversight to ensure compliance. There's a lot of discussion in the pleadings, the briefing, about the instances in which the growers were interjecting themselves into the process. All they were doing was monitoring the contract, as they were specifically allowed to do. And again, all of the things that Global Horizons were doing with their own employees had nothing to do with what the farmers were doing with their own employees. I say I'm over my time. Thank you. Thank you. Rebuttal. Thank you, Your Honors. I'd like to make a couple of additional, hopefully clarifying points. First, with respect to the Washington Act, Your Honor asked a question about how statutory or actual damages are determined. And really, the case determines those damages. Here, many of the violations, just as the legislature recognized, were difficult to evaluate in monetary terms. In addition, this was a class action, which involved over 600 farm workers from the Yakima Valley. Again, the federal statute shows a cap on class actions. That limit on damages was not adopted by the Washington legislature. Second, with respect to the legislative history, the up-to language and the fact that it was in the bill once, and unlike the legislative history that this court looked at in the Longboy case, it was there in the first draft, it was taken out in all subsequent drafts, and was not in the final legislation. That sequential drafting here is very clear, distinguishing it from the Longboy case. Finally, it's very significant. The Washington Act makes persons who use unlicensed farm labor contractors liable to the same extent and in the same manner as the contractor. With respect to prevailing party, on page 10 of the excerpts of record, the court did specifically determine that the plaintiffs were not the prevailing party under the Washington Act, and we submit that as clear legal error. With respect to the jury determination, the jury determined the workers had been discriminated against based on race. By looking at that verdict again, the district court disregarded the verdict and did not give the workers the benefit. So what? His case was being, the workers' case against the growers was being tried to the judge. Why does the jury verdict have any impact on what the judge is going to decide? Because the workers never waived their Seventh Amendment right to a jury trial. They did. They stipulated to a bench trial. No, they did not, Your Honor. On the specific issue as to whether global discriminated, the workers did not stipulate to a bench trial. Can you show me anything in the record that shows an objection to the judge's proceeding with a bench trial? There are three specific instances I'd like the court to look at. Okay. The very first is at the conclusion of the pretrial conference when the court specifically summarized those proceedings and said, the jury is going to only hear the claims against global, and so the vicarious liability will be heard by me. That's found at 118 in the excerpts. Isn't that what happened? The court never determined vicarious liability. Instead of determining that question, it redetermined the question the jury had already decided, and that is whether or not global had discriminated. The growers didn't participate in the argument to the jury because they seemed to understand, and certainly my impression looking at the record, that their case was being tried to the judge, so they wouldn't participate in the argument to the jury. The trial court specifically admonished the attorney for the growers to participate in the jury instruction process because they had a dog in the fight. That's at the worker supplemental excerpts of record at page 54, and specifically said that they may be bound by the discrimination verdict, and that's why the court wanted them to participate. They did not then seek to participate in closing argument to the jury. They proceeded with the stipulation as they understood it. Finally, the court here shows that they understood the workers' stipulation because with respect to the jury verdict on the violation of the Washington Contractors Act, the court found the growers were vicariously liable, but did not hold the growers responsible for the jury verdict on discrimination. That cannot be reconciled. Run through that last one for me again. At what point did the court find the growers liable? After trial, Your Honor, the court looked at two issues. The jury found two things, whether there was a violation of the Contractors Act and whether Global had discriminated. The jury returned a verdict on both those issues in the workers' favor. After trial, the court deferred to the jury's ruling on the Contractor Act claim and said, I'm not going to set that aside. The growers are vicariously liable for it. But on the second verdict, on the verdict on discrimination, instead of doing the same thing the court did on the violation of state law, the court redetermined whether or not the discrimination had took place. And therefore, if there was no discrimination, there was no vicarious liability. Right. And that violated the workers' rights to a jury trial. But as the first example that you read as to what the judge said, he said, I don't see how that they didn't understand or didn't consent. The first reading that you gave was that he would determine all issues relating to the growers. The court stated the jury is going to only hear the claims against Global. The jury did hear the claims against Global. And the jury determined discrimination was present. And the jury verdict stood. The judge didn't interfere with the jury verdict. So he didn't do anything to interfere with the jury verdict against Global. And then he said, well, I'm trying the case against growers, and I disagree. There's no vicarious liability, in effect, because I disagree, and my role is the trier of fact here with respect to growers. I find there's no discrimination. Your Honor. I don't see how that violates a Seventh Amendment right here. Because a waiver of a jury trial must be clear and manifest. And the court clearly indicated the workers' interpretation of the stipulation was correct when it did two things. It admonished the grower defendants that they had better participate in jury instructions because they stood to be liable for the verdict. Well, that's because the judge was leaving himself the option of agreeing with the jury verdict, and he's essentially saying to them, you know, it might be wise for you, even though that's not what's being tried here, to participate in the extent that he suggested. Your Honor, I respectfully submit the workers never waived their right to have the jury determine whether or not global discriminated. And that is, in fact, what the jury concluded. They are entitled to the benefit of that jury verdict by having that imposed against the parties who stand able to pay the judgment. The district court found the contractor had insufficient funds. The jury verdict only has meaning if the principles of vicarious liability are applied. That may be so, but I don't know how far that equitable argument takes you. I see I'm well over my time. Thank you. Thank you. We thank both counsel for their arguments in this, another quite complicated case. The case just argued is submitted.
judges: Clifton, Nr Smith, Cjj Korman (Edny), Dj